UNITED STATES *v.* ABERCROMBIE & FITCH Co. (No. 3574)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham, Jr.,* special attorney, of counsel), for the United States.
*Siegel & Mandell* for appellee.

[Oral argument October 5, 1932, by Mr. Lawrence; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is invoiced as hand-carved wooden toys and is itemized as "riders on horse, various," "hounds, assorted," "foxes," and "bridges." The official samples, collective Exhibit 1, are wooden figures responding to the invoice description

[1] T. D. 46060.

and consist, *first*, of a gray horse about 7½ inches long by 6 inches tall, with painted tail and mane and with brown leather saddle, bridle and bridle reins; *second*, a rider for the horse, dressed in conventional fox-hunting habit, black boots, white trousers, red coat, black hat, etc.; *third*, a white hound, with brown and black spots, in an attitude of being on the trail; *fourth*, a wooden bridge with banisters, painted in white, brown, and black; *fifth*, a reddish colored fox. The rider, hound, and fox are proportionate in size to the horse. Each of the articles is neatly hand carved and colored to represent the real article or animal in miniature.

The collector classified the merchandise as toys dutiable at 70 per centum ad valorem under that portion of paragraph 1513 of the Tariff Act of 1930 which reads as follows:

PAR. 1513. * * *, and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem.   As used in this paragraph *the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development.*   The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act. [Italics ours.]

But one of the various claims by the importer in its protest needs consideration here.   This is the claim that the merchandise is dutiable at 33⅓ per centum ad valorem under paragraph 412 of said act which covers, among other things, manufactures of wood, not specially provided for.

The United States Customs Court, in an opinion by Judge Sullivan, sustained the protest as to the merchandise represented by collective Exhibit 1 and overruled it as to other merchandise not involved in this appeal.   From the judgment of the trial court the Government has appealed here.

At the trial of the cause below the importer introduced collective Exhibit 1 as representative of the merchandise involved in the importation and also the testimony of two witnesses.

One of the witnesses, James O. Montgomery, testified for the importer, plaintiff, that he worked in the importing department of the appellee and had so worked for nearly two years, and that, in two homes where there were no children, he had seen the merchandise represented by the exhibit used as mantel decorations, that is, for the purpose of ornamentation, and that the items of the exhibit represented a hunt group, and that he had never seen this particular merchandise used by children for any purpose whatsoever.   On cross-examination he stated that he only distinctly remembered seeing them used in two private homes, in Rye and Port Chester, New York; that he did not suppose there was anything about the importation to make them injurious to use by children, but that they were not intended for such purpose and that "we do not sell them for that."   He testified

in effect that the group might consist of more horses and more hounds, but that this group was a complete group.

Bruce Montmorency testified that he was assistant merchandise manager for the importer and had been serving in that capacity for about a year, and as such assisted in merchandising about 14 or 15 departments; that among them was a department which covered articles like those in collective Exhibit 1; that in New York City he had seen them used upon one occasion in the center of a dressed dining table and that he knew of no other use, and that he had not seen them used by children. The witness further stated that as far as his sales were concerned and as far as he knew they were used only for show or ornamental purposes in decorating mantels or tables.

It was agreed at the trial that wood was the component material of chief value of the merchandise.

The trial court, in sustaining the protest, used the following language:

The testimony of plaintiff's two witnesses was not rebutted by the defendant nor disturbed on cross-examination. We believe the plaintiff has made out a *prima facie* case indicating that these are not toys, and the presumption attaching to the collector's action has been overcome. In this conclusion we are borne out by an inspection of the exhibits. We can not believe that these nicely carved, decorative little figures were intended for use as playthings for a child of tender years. If the merchandise was so intended, testimony to that effect should have been offered. See *United States* v. *Frederick Warne & Co.*, 18 C. C. P. A. 380, and the appellate court's definition of "children" as set out at the bottom of page 385 of that opinion.

It is the contention of the Government in this court that the collector's classification carries with it the presumption that the collector correctly found that the importation involved herein was chiefly used for the amusement of children, and that under the rule laid down by this court in *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, and elsewhere, the importer has not sustained the burden of overcoming the presumed correctness of such finding and classification. The Government argues that if it is admitted that everything that was said by the two witnesses be true, it does not sufficiently negative the finding of the collector that the merchandise was chiefly used by children within the meaning of this. paragraph.

The *Wilbur-Ellis Co.* case, *supra*, involved the dutiable classification of fish-cake meal used for feeding livestock and chickens and as a. fertilizer. In that case, in order for the importer to sustain the burden of proof placed upon it, it was necessary to prove that merchandise of the character of the importation was chiefly used for fertilizer at or immediately prior to the date of importation. The importer contended there that it was only necessary for him to prove chief use at the time the tariff act was enacted, the Government contending that

the controlling factor was the chief use at the time of importation. Importer's evidence was not directed to the period of time immediately before importation. This court held that importer had failed to prove the chief use at the time of importation or immediately prior thereto and affirmed the judgment of the court below which overruled the protest.

As we see it, the *Wilbur-Ellis* case, *supra*, is little if any help in the decision of the issue which confronts us here, except it is controlling as to the period of time when chief use must be shown.

There is no contention here but that the assessment of the collector under the provision for toys must stand unless the record shows that on or about the date of importation merchandise of the character involved herein was not chiefly used for the amusement of children. It is conceded by all the parties that all that was necessary for the importer to win his contention was that after the trial the record must show a *prima facie* case rebutting the presumed findings involved in the collector's classification.

We think the introduction of the samples and the testimony of the two witnesses made a *prima facie* case. No evidence was introduced by the Government tending to contradict that introduced by the importer. Such evidence must not only be regarded as true and be accepted, but all reasonable implications that may be drawn therefrom may also be entertained. 23 C. J. 54, sec. 1797. Two witnesses who sold these articles testified to their actual use and that they knew of no other use, and that such use was not for the amusement of children. One witness testified that the articles were not intended for the purpose of amusement of children and that they did not sell them for that purpose. There is no showing that these articles are sold throughout the United States. It may be that they are a new article of commerce and have only found their way into a small portion of the United States.

After the importer had introduced the exhibit and the testimony of its two witnesses heretofore recited, it had a right to rest and rely upon such showing until other evidence was introduced which contradicted or challenged the same. Surely it was not necessary, under the circumstances, for the importer to produce witnesses from every portion of the United States to prove the use or lack of use of his importation, and we say this with special reference to the particular merchandise involved in this appeal.

We held in *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. (Customs) 188, T. D. 44378, that in a classification case the sample is ofttimes a very potent witness, and we think this is particularly true in the case at bar. Like the court below we can not conclude from an examination of the exhibit that the hand-carved decorative figures, representing as they do an important phase of the social life of some

of the best of our citizenry of this and past generations, were intended for or suitable for use as playthings for children. We are constrained to hold that Congress, by its use of the phrase "used for the amusement of children," did not mean for the use of grown-up children or youths, but children who, by reason of youth and lack of mental development, were incapable of great mental exercise in deriving amusement.

The words "child" and "children" have been variously defined in different decisions of the various courts, depending upon the sense in which they were used in particular statutes, ordinances, regulations, etc., in which the phrase was found. Numerous decisions hold that a child within the meaning of the inheritance statute means the offspring of the deceased parent. In other instances where children's rights are involved the word "child" includes a young person from infancy to maturity, but in cases like the one at bar we think the following definition found in Webster's New International Dictionary (1932) should be accepted:

child. 3. A young person of either sex, esp. one between infancy and youth; hence, one who exhibits the characteristics of a very young person, as innocence, obedience, trustfulness, limited understanding, etc.

In the same authority, "youth" is defined as—

youth. 2. The part of life that succeeds to childhood; the period preceding maturity, usually that from puberty to maturity; adolescence; * * *.

One of the definitions of "child" or "children" given in Corpus Juris, volume 11, page 756, refers to an age less than maturity but most commonly between infancy and youth, generally under the age of puberty. See numerous cases there cited which are, we think, in point. *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 281, T. D. 46077, decided concurrently herewith.

For any person, young or old, to get amusement or enjoyment from the importation at bar it would be necessary for him to be of sufficient mental maturity that he would understand and appreciate what the exhibit represents. It is not likely that many children before puberty would find much amusement in the hunt group at bar. The items are designed to remain stationary and make no noise. Little, if any. amusement or pleasure could be derived from the use or possession of the same without such a comprehension of what they represent as would be rarely, if ever, found in children.

All the testimony introduced is in harmony with and pointing toward the conclusion that they are not chiefly used for the amusement of children. It is not conclusive and under some circumstances might not be regarded as sufficient to constitute a *prima facie* case, but we think the testimony and the exhibit do make a *prima facie* case which is sufficient to have required the Government, if it chose, to rebut the same.

272

As to collective Exhibit 1 the protest was properly *sustained*, and the judgment of the United States Customs Court is *affirmed*.